UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WM CAPITAL PARTNERS I, LLC,   No. 10-10359

    Plaintiff,   District Judge Gerald E. Rosen

v.   Magistrate Judge R. Steven Whalen

BBJ MORTGAGE SERVICES, INC.,
ET AL.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff's Motion for Preliminary Injunction and Expedited Hearing [Docket #24], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED.

### I. BACKGROUND

On September 18, 2008, Plaintiff WM Capital Partners I, LLC ("WM Capital") entered into a business loan agreement with non-party Michigan Heritage Bank.[1] On April 24, 2009, the Office of Financial and Insurance Regulation of the State of Michigan closed Michigan Heritage Band, and the Federal Deposit Insurance Corporation ("FDIC") was named receiver. On or about October 15, 2009, WM Capital purchased the loan at an FDIC auction, and was assigned all rights under the business loan agreement.[2]

Plaintiff filed the present lawsuit claiming that Defendants defaulted on the

---

[1] The Loan Agreement is appended to Plaintiff's motion as Exhibit A.

[2] The assignment and assumption of interests granting WM Capital these rights is appended to Plaintiff's motion as Exhibit F.

-1-

business loan, which matured on September 18, 2009. Plaintiff states that Defendants have failed to make any payments on the loan, including interest payments.

The loan agreement provided Defendants with a $2,000,000 line of credit, and Defendants executed a $2,000,000 promissory note along with the agreement. *See* Plaintiff's Exhibit B. Defendants used the funds to give mortgage loans to specific individuals and entities, and those loans were secured by mortgages executed by the mortgagors in favor of Defendant (the "Collateral Mortgages").

Along with the loan agreement and promissory note, Defendants also executed a Warehousing Agreement (Plaintiff's Exhibit C) and a Commercial Security Agreement (Plaintiff's Exhibit D). The Warehousing Agreement gave Michigan Heritage Bank a security interest in the Collateral Mortgages, as well as "all payments and prepayments of principal, interest, penalties and other sums due or to become due on each Collateral Mortgage Loan."

The Commercial Security Agreement contains two provisions regarding payments made by the mortgagors in the Collateral Mortgages:

> "At any time and even though no event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the indebtedness." *Plaintiff's Exhibit D*, p.2.
>
> "Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the indebtedness in such order or preference as Lender may determine.
>
> "To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payment directly to Lender." *Plaintiff's Exhibit D*, p.3.

Plaintiff states that Defendants have "continuously usurped WM Capital's ability"

to "collect Collateral Mortgage and rent payments directly from Mortgagors and tenants pursuant to the Loan Documents...." *Plaintiff's Response*, p.7. Plaintiff states that Defendants have placed Collateral Mortgage payments in an ersatz "escrow account," and have received mortgage and rental payments without accounting for them or turning them over to Plaintiff. Plaintiff seeks preliminary injunctive relief requiring that (1) Defendants turn over all mortgage payments made on Collateral Mortgages to WM Capital; (2) Defendants turn over all rents collected under th Assignment of Rents provisions contained in the Collateral Mortgages; (3) Defendants' self-styled escrow account be released in favor of WM Capital; and (4) Defendants be enjoined from encumbering or transferring any assets serving as security for WM Capital's claim, pursuant to the Loan Documents.

## II. LEGAL STANDARDS FOR INJUNCTIVE RELIEF

In determining whether to grant a preliminary injunction, a court must examine and weigh four factors: (1) whether the moving party has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002); *McPherson v. Michigan High School Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (*en banc*). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet*, 305 F.3d at 573.

A preliminary injunction is an extraordinary remedy, "which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Id.; Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). The level of

proof required for the Plaintiff to obtain a preliminary injunction "is much more stringent than the proof required to survive a summary judgment motion." *Id.*

### III. ANALYSIS

#### A. Likelihood of Success on the Merits

The dispositive issue in this lawsuit is whether Defendants are indebted to Plaintiffs in the amount of $1.3 million based on the above-described loan documents. Those documents, which are appended to Plaintiffs' motion, speak for themselves, and there does not appear to be a dispute as to whether Defendants paid that amount (or any amount) when due. They have not.[3] Plaintiffs have shown a strong likelihood of success on the merits.

#### B. Irreparable Harm

It is this factor that was of greatest concern to the Court, and for this reason supplemental post-argument briefing was ordered. The Defendants correctly note that as a general principle, irreparable harm is not shown where a party can be made whole by payment of a monetary judgment. *Langley v. Prudential Mortg. Capital Co.*, LLC, 554 F.3d 647, 649 (6th Cir. 2009), citing *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992). However, this is not an absolute rule, and the equation can change when a plaintiff has a security interest in certain assets and seeks to preserve the status quo with regard to that collateral**.** *See See Tocco v. Tocco,* 409 F.Supp.2d 816, 831-32 (E.D.Mich.2005) (enjoining the defendant from transferring or encumbering assets in

---

[3] The issue in this case is not, as Defendants have argued, whether Plaintiffs can take "possession of non-pledged mortgages whose value exceeds the amount of the loan." *Defendants' Response*, pp. 13-14. Plaintiffs made clear at oral argument and in their reply and supplemental briefs that they do not seek to collect on mortgages that were not part of the collateral. Indeed, Defendants appear to concede that Plaintiffs have the right to take possession of the collateral, stating, "The dispute is not whether the Plaintiff is entitled to take possession of the collateral that is actually secured by the loan." *Id*.

which plaintiff had an interest in order to preserve the status quo). In *Plainfield Specialty Holdings II Inc. v. Children's Legal Services PLLC*, 634 F.Supp.2d 833, 846 (E.D.Mich. 2009), the plaintiff, like WM Capital Partners, had a security interest in certain of the defendant's assets, including its accounts receivable. Even though the plaintiff's remedy for a loan default was ultimately a money judgment, the court granted a preliminary injunction, stating that "there are reasons here to be concerned about the availability of the collateral absent an injunction." *Id.* at 846. Finding irreparable harm, the court stated, "Under these circumstances, Plaintiff has demonstrated that it is likely to not have recourse to other funds should these be depleted, and that CLS cannot be trusted to administer the funds on its own."

The lesson of *Plainfield Specialty Holdings* is that notwithstanding the general rule, a plaintiff with a secured interest in a defendant's assets may obtain preliminary injunctive relief if there is a risk that the collateral will be impaired or depleted. In this case, although each party asserts that it is the more prudent manager of the Collateral Mortgages, Plaintiff has shown that Defendants have failed to adequately account for mortgage payments or rent, including proceeds placed in their "escrow account," an account over which they have exclusive control. Moreover, Plaintiff has a clear right under the Warehousing Agreement and Commercial Security Agreement to collect income, rents and revenues from the Collateral Mortgages, and to receive direct payment from the mortgagors of those properties. As was the case in *Plainfield Specialty Holdings*, Plaintiff has shown a sufficient likelihood of irreparable harm if a preliminary injunction is not granted.

### C. Harm to Others

Defendants suggest that they would be harmed by Plaintiff's mismanagement of

the mortgaged properties, thereby diminishing their value and exposing Defendants to liability to the mortgagors. For example, Defendants notes that Plaintiff filed *lis pendens* against properties that are not subject to the Collateral Mortgages. However, Plaintiff responds that the filing of those notices was an error created by Defendants' failure to properly identify precisely which properties constituted the collateral. Now that that information has been disclosed, the *lis pendens* have been removed.[4]

In support of their argument that Plaintiff does not adequately administer the mortgages or protect the interests of the mortgagors, Defendants also alleged at oral argument that Towne Mortgage Company, which services the mortgages, failed to make an insurance escrow payment on one of the Collateral Mortgages. However, Plaintiff has submitted as Exhibit B to its supplemental brief [Docket #33] the affidavit of Sarah Pereira, a Default Manager at Towne Mortgage, showing that in fact, WM Capital funded the shortage in this particular mortgagor's account, and Towne paid the homeowners' insurance timely, with no lapse in coverage. Defendants have not shown that either Plaintiff or Towne Mortgage is unable to properly service these mortgages, or that they are in any way indifferent to the interests of the mortgagors.

Defendants hold no security interest in Plaintiff's property. If they should prevail at trial, any damages caused by the preliminary injunction would be compensable by money damages. There has been no showing that Plaintiff is insolvent or would otherwise be unable to satisfy a money judgment. More importantly, the injunctive relief sought provides for nothing more than compliance with the Loan Documents, i.e., the

---

[4] *See Plaintiff's Reply Brief* (Docket #30), Exhibit H (affidavit of Thomas J. Munzenberger, verifying releases of *lis pendens*); Exhibit I (Notices of Release of *Lis pendens*). The list of properties subject to the Collateral Mortgages is attached to Defendants' Response (Docket #27) as Exhibit 1.

Warehousing Agreement and Commercial Security Agreement, that Defendants already agreed to. Again, *Plainfield Specialty Holdings* is on point:

> "There is no potential for irreparable harm to CLS because any damages to CLS resulting from an injunction would be compensable in money damages, there is no showing that Plainfield would be judgment-proof, and the prospective harm to CLS consists entirely of its being compelled to fulfill its obligations under valid security agreements. Thus, this factor weighs in favor of an injunction." *Id.*, 634 F.Supp.2d at 848.

Because there would be no irreparable harm to either the Defendants or the borrowers on the Collateral Mortgages, this factor weighs in favor of granting a preliminary injunction.

### D. The Public Interest

The public has an interest in the enforcement of security agreements. The court in *Plainfield Specialty Holdings*, *id* at 848, stated:

> "'[U]pholding the rights of ... secured parties to repossess collateral without awaiting the resolution of unsecured creditor claims is in the best interest of our credit-based economy.'" *Foley & Lewis Racing, Inc. v. Torco Racing Fuels, Inc.,* No. 08-CV-13416, 2009 WL 22860, *2 (E.D.Mich. Jan. 5, 2009). The nature of the relief sought by Plainfield would serve the public interest in vindicating the system of security agreements that makes our economic system possible.
>
> Because the UCC system is designed to ensure that secured creditors do not have to fight with their debtors in litigation in order to obtain satisfaction of monies lent on security, allowing a debtor like CLS to avoid its financial commitments and contractual obligations would not be in the public interest. This Court concludes that, given the public interest in the enforcement of security agreements, and the lack of any corresponding harm to the public interest in compelling CLS to pay its accounts receivables into the lockbox established by the parties' security agreements, this final factor also weighs in favor of the issuance of the injunction."

Thus, all four factors weigh in favor of granting injunctive relief.

### IV. CONCLUSION

I therefore recommend that Plaintiff's Motion for Preliminary Injunction [Docket #24] be GRANTED, ordering as follows:

1. That all borrowers on the Collateral Mortgages be notified to make all future payments to Towne Mortgage Company, as mortgage servicer on behalf of WM Capital Partners;

2. That all renters or leaseholders of property subject to the Collateral Mortgages be notified to make all future payments directly to WM Capital Partners;

3. That Defendants turn over to Plaintiff all rents or mortgage payments held by them, including funds in Defendants' self-described escrow account;

4. That Defendants be enjoined from encumbering or transferring any assets serving as security for WM Capital's claim, pursuant to the Loan Documents.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fd'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue

contained within the objections.

                                        s/R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE

Dated: August 17, 2010

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 17, 2010.

                                        s/Susan Jefferson
                                        Case Manager